**FROMMEL, Admrx. v CONEY ISLAND, INC.**

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5828. Decided June 24, 1940.

Alvin H. Rowe, Cincinnati, for appellee. ♦

August A. Rendigs, Jr., Cincinnati, Wm. H. Fry, Cincinnati, and Robert F. Dreidame, Cincinnati, for appellant.

## OPINION

By ROSS, J.

Appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, rendered in conformity to a verdict for $5,000 in favor of the plaintiff, who brought an action as administratrix to recover from the defendant damages for the wrongful death of her son, who she alleges lost his life while attempting to deliver a package of paint on the defendant's boat, which was moored to a barge on the Ohio River.

In her amended petition, the plaintiff charges that the defendant is engaged in the operation of a boat known as the "Island Queen" and a wharf boat used to enable passengers to board and land from such "Island Queen", that on the 11th day of February, 1938, about 3:30 o'clock, P. M., such wharf boat was moored to the Ohio Shore at Cincinnati, near the foot of Pike Street in such city; that the defendant had constructed a temporary gang-plank, approximately two feet in width and some 30 feet in length, extending from the shore to the wharf boat, that the "Island Queen" was fastened to the outside or river side of such wharf boat; that such gang-plank formed the only means of ingress and egress from the "Island Queen" and wharfboat; that the plaintiff's decedent fell off such gang-plank and was drowned while trying to deliver a package of

paint to the defendant on its boat the "Island Queen".

The plaintiff further charges that the decedent met his death "solely and proximately by the negligence and carelessness of the defendant" in that (1) no rail was provided for such gang-plank, (2) the gang-plank was not "flush with the shore", and that such gang-plank tapered off to the "shore level"; (3) defendant failed to provide an "adequate gang-plank of sufficient strength and stability to support passengers thereon," (4) that the fastenings to secure the wharf boat permitted the gang-plank to sway; (5) that the defendant moored its wharfboat and the "Island Queen" to the shore "where the current was swift and uneven".

The answer of the defendant was in effect a general denial.

From the evidence, it appears that the defendant company had ordered a quantity of paint delivered to it on its boat the "Island Queen"; that the paint company employed a delivery company, the employer of the deceased, to make the delivery, that the package addressed to the "Island Queen" was given the decedent to deliver, that he was seen some fifty yards away from the point where the wharf boat was moored, that some little time later, a man living on a house boat, some little way down the river, heard a cry for help and saw some part of a man's body in the water, half way between the shore and the wharf boat and half way from the gang-plank to the stern of the boat, that this man in the water had light colored hair similar to that of the decedent, that decedent's body was recovered from the stern chain of the wharf boat, some eighteen days after he disappeared. that the boats and gang-plank had been in approximately the same position for some three months, that there were in fact two gang-planks, one extending from the shore to a "John boat" and another from the "John boat" to the wharf boat, that the "John boat" or skiff "bobbed" in the current and waves passing along the shore.

Motions were seasonably made for judgment after the introduction of evidence and verdict and overruled.

The only justifiable inference from the evidence is that the decedent was somewhere in the general neighborhood of the defendant's property, with a package addressed to it, which he had been instructed to deliver to it, and that in some way he was drowned near the wharf boat of the defendant. What he did, no one knows. Certain considerations are apparent. If the appliance used by the defendant to enter and leave its boat was as dangerous as the plaintiff alleges and some of the witnesses state, it was obviously dangerous. Certainly anyone approaching the situation could see the width of the plank, its inclination from the bank, the security of its purchase on shore and on the boat, that the boats were "bobbing", and that the current was swift. Certainly, if there is no presumption under such circumstances of contributory negligence (29 O. Jur., p. 656), neither can there be a presumption, that the equipment used by the defendant, even if found to be unsafe for those using this means of ingress and egress to the boats, was through such unsafe condition the sole, proximate cause of the decedent's death.

It is necessary in order that the plaintiff may recover that the facts proved establish such proximate cause by a preponderance of the evidence. **Montanari v Haworth, 108 Oh St 8; Flamm v Coney Island Co., 49 Oh Ap 122; Haas v Kundtz, 94 Oh St 238, 245; 29 O. Jur. 654.**

It is true that the plaintiff is entitled to all reasonable inferences from the facts proved, but she is not entitled to place inference on inference. **29 O. Jur. 629; Sobolovitz v Lubric Oil Co., 107 Oh St 204.**

It is necessary to infer from these facts that the decedent found it necessary to go upon the gang-plank. (Whether such is a fact it is not necessary here to state.) It is necessary to

infer, that having gone  upon the plank, he fell off of the plank, solely because of the negligence of the defendant, for if his own negligence contributed in any way to such accident, the plaintiff cannot recover.

Certainly, such inference or conclusions may not be drawn from the meager facts proved.

The judgment of the Court of Common Pleas should be reversed and judgment here entered for the defendant.

HAMILTON, PJ. and MATTHEWS, J., concur.